**In the Matter of James Edward STRATBUCKER, Debtor.**

**Bankruptcy No. BK79–1549.**

United States Bankruptcy Court, D. Nebraska.

May 14, 1980.

252

Don J. Sixta, Fremont, Neb., for James Stratbucker.

Richard D. Myers, Omaha, Neb., for Iona Stratbucker.

Jon Sedlacek, Blair, Neb., for Blair Bank, Inc.

Rose K. Barger, Omaha, Neb., for Federal Land Bank.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

The debtor-in-possession, James Stratbucker, filed a motion requesting the right to obtain credit by granting priority over any and all administrative expenses as permitted by Section 364(c) of the Bankruptcy Code. Two creditors filed objections within the allowed time and appeared at the hearing and the attorney for a third creditor appeared at the hearing and there made oral objection to the proposed priority.

Evidence was offered from which I find the following facts. The debtor-in-possession is a farmer without the necessary working capital to plant his spring crops. In order to plant the crops, he needs to incur debt in the following amounts:

fuel, $2,500; seed corn, $1,200; herbicide and pesticide, $1,800; tractor overhaul and repair, $2,000 or more; fertilizer, $4,000.

Those whom the debtor has approached to obtain credit for these items have refused to give credit but stated that they would grant credit if they received Section 364(c) priority for repayment of the debts. The debtor-in-possession has not yet negotiated any further terms with any creditor.

The debtor's schedules were offered into evidence. The summary shows total debts of $286,456.92 and total property valued at $357,447.00. Most of the debt is for two real estate mortgages, both of which contain a reservation by the lender of a security interest in rents and profits. Most of the property valuation is for 270 acres of real estate, valued at $1,000.00 per acre.

The creditors who object to the granting of the priority are Iona Stratbucker, the debtor's former wife, who is owed unpaid child support and who will be liable on the mortgages if the defendant defaults and there is a deficiency; Blair Bank, which holds a security interest in a 2-ton Ford truck belonging to the debtor; and the Federal Land Bank, the holder of a $15,000 first mortgage on 120 acres of farmland, some of which now belongs to the debtor's former wife. The Farmer's Home Administration, which holds a $209,850 mortgage on the real estate filed no objection.

The gist of the plan as explained by the debtor's testimony is that the debtor will purchase the necessary supplies to plant crops on credit and repay the debts ahead of all others out of the proceeds from the crops. A potential obstacle to this plan is that Section 364(c)(2) and (3) do not authorize the granting of a lien senior to an already existing lien. Liens on unplanted crops are permissible in conjunction with mortgages, and both of the debtor's mortgages reserve such liens. Neb.Rev.Stat. U.C.C. § 9–204(4)(a).

However, § 552(b) provides that liens on "proceeds, product, offspring, rents, or profits" of property subject to a security interest continue after bankruptcy

"to the extent provided by such security argument and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

In addition, Section 364(d) authorizes the granting of a lien senior to an existing lien after notice and a hearing if there is adequate protection of the interest of the lienholder.

I conclude that the relief sought by the debtor may be granted under either of two theories. First, I may order that the security interest not continue pursuant to Section 552(b) to the extent required to grant a Section 364(c) priority. Second, I may grant a senior lien pursuant to Section 364(d) if lienholders' interests are adequately protected.

It appears from the evidence that the lienholders who will be affected by the granting of the priority are adequately protected in that the value of the real estate exceeds the debt. However, there is also adequate protection in that, unless the crops are planted, the lienholders will have no interest requiring protection. Thus, even if the proceeds from the crops are sufficient only to cover the costs of planting, the lienholders are in as good a position as they would be if the crops were not planted at all.

After consideration of the equities of this matter, I have concluded that the priority should be granted subject to certain limitations. Short of liquidation, the sole chance for rehabilitation of the debtor lies in carrying on his farming operation. Creditors who supply the wherewithal to grow the crops should logically receive the first proceeds, as without such credit no proceeds at all would exist. Moreover, a substantial cushion remains in the estate, so that it is unlikely that existing creditors, secured or unsecured, will be injured by allowing the debtor to borrow funds for one more growing season.

The Section 364(c) or (d) priority of the creditors is to be limited to the proceeds of the crops grown with the funds advanced. The debtor may, of course, offer ordinary administrative priority under Section 364(a). However, the equities of the case do not justify granting Section 364(c) or (d) priority in the proceeds of crops already growing or in other assets of the estate.

In addition, as the debtor has not negotiated an interest rate, I further limit Section 364(c) or (d) priority to those contracts in which the interest rate does not exceed 18% per year. Finally, such priority shall not be granted to any debt not evidenced by a written contract specifying the nature and amount of goods purchased, the price, the rate of interest, and the terms of repayment.